IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HAJI WAZIR, *et al.*; | ) |
| | ) |
| Petitioners/Plaintiffs, | ) |
| | ) |
| v. | ) 1:06-CV-01697 (RBW) |
| | ) |
| ROBERT GATES, *et al.*; | ) |
| | ) ORAL ARGUMENT |
| | ) REQUESTED |
| JOHN DOE 1, | ) |
| Custodian of Petitioner, | ) |
| | ) |
| JOHN DOE 2, | ) |
| Custodian of Petitioner, | ) |
| | ) |
| Respondents/Defendants. | ) |
| | ) |
| Respondents are all sued in their official capacities. | ) |

**PETITIONERS' BRIEF IN RESPONSE TO
RESPONDENTS' SUPPLEMENTAL BRIEF IN SUPPORT OF THEIR MOTION
TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

Petitioners' respectfully submit this Brief in Response to Respondents' Supplemental Brief in Support of Their Motion to Dismiss for Lack of Subject Matter Jurisdiction, filed in this case on May 15, 2009. Petitioner Haji Wazir, an Afghan citizen currently detained by Respondents at Bagram, *despite having been declared eligible for release by the Afghan government more than a year ago,* seeks to invoke this Court's jurisdiction to determine the legality of his detention. For the reasons that follow, this Court should disregard the habeas-stripping provision of the Military Commissions Act of 2006 ("MCA"), § 7(a) (codified at 10 U.S.C. § 47A), as it is a violation of Article III of the Constitution and the separation of powers principle, and allow Petitioner Wazir to

pursue the prosecution of his petition for a writ of habeas corpus under the federal habeas statute, 28 U.S.C. §2241.

## ARGUMENT

Article III of the Constitution and the separation of powers principle compels the conclusion that the habeas-stripping provision of the MCA works an unconstitutional restraint on one of the Judiciary's most important functions in our tripartite constitutional structure—to act as "the surest safeguard of liberty," Memorandum Opinion of April 2, 2009, 3 ("Mem. Op.") (quoting *Boumediene v. Bush*, 128 S. Ct. 2229, 2247 (2008)) (internal quotation omitted), by serving as the "essential mechanism," *Boumediene*, 128 S. Ct. at 2246, to protect individuals against an Executive's "arbitrary exercise of the government's power." Mem. Op. at 2. As this Court aptly noted, *id.*, the Framers drafted Article III of the Constitution to create a broad mandate for judicial review, seeing the courts' role in this regard as a critical component of our system of checks and balances. The Federalist No. 84, at 512 (Alexander Hamilton) (C. Rossiter ed., 1961) (quoting 1 W. Blackstone, Commentaries * 136); *see* U.S. Const. Art. III §§ 1and 2, cl. 1 and 2.

The Supreme Court in *Boumediene* delineated the test for determining whether a person held without charge or trial by the United States has any right to challenge the legality of his detention. After noting that § 7 of the MCA deprived even the Supreme Court of jurisdiction to entertain the Guantanamo detainees' habeas petitions before it, *id.* at 2242-44, the Court held that a multi-factor test requiring an individualized assessment should be used to determine whether a prisoner is entitled to invoke the protections of the Suspension Clause. *Id.* at 2240; 2262.

This Court's application of the *Boumediene* test notwithstanding, it overlooked two

important factors when it considered whether the law mandated a decision holding that Petitioner Haji Wazir is entitled to the Great Writ.  First, the Court's analysis was predicated on the assumption that the ability of a Petitioner to assert that § 7 of the MCA permanently suspends the writ is dependent upon a prerequisite finding that he is otherwise entitled to the protections of the U.S. Constitution.  However, because the concern at issue here is one involving the integrity of the constitutional structure itself, this Court is obliged to evaluate whether the challenged statutory provision does violence to the separation of powers principle.  The decisional authority does not demand that the petitioner raising the issue demonstrate a violation of constitutional rights, because the determination of whether the separation of powers principle has been violated falls uniquely within the purview of the courts to determine.  *Boumediene*, 128 S. Ct. at 2259-2260.

Second, the Court concluded that the habeas statute, 28 U.S.C. §2241, is not available to Petitioner Haji Wazir solely because the *Boumediene* opinion addressed an "as applied" and not a facial challenge to § 7 of the MCA.  Petitioner Wazir's arguments that § 7 violates the separation of powers principle and Article III, if acknowledged by the Court, would require it to disregard the offending provision, and thus would serve to revive the statutory writ.

In addition, as the Court itself noted in its request for supplemental briefing, the principle set forth in *United States v. Klein*, 80 U.S. (13 Wall.) 128 (1871) and its progeny, has been repeatedly affirmed by the Supreme Court and remains fully in force to the present day.  *See Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211 (1995).  There can be no doubt that § 7's stripping of courts' jurisdiction to review any and all actions of the Executive with regard to prisoners denoted as "enemy combatants", when coupled, as is the case here, with a final and unreviewable Executive determination that Petitioner Wazir is properly detained as an "enemy combatant", runs afoul of the *Klein* rule.

Respondents cannot dispute that under these circumstances, the MCA has enabled the Executive to determine the facts of Mr. Wazir's case in secret, and by precluding any judicial review, has left determination of the "rules of decision" to the Executive as well. As a result, MCA § 7 has shifted the federal judiciary's Article III powers to engage in independent fact-finding and determine the rules of decision to be applied to the Executive, violating both the mandate of Article III and the separation of powers principle. This Court's recognition that the MCA causes a deep structural break in our constitutional framework is all the more critical in a case such as this where the challenged provision relegates a man to indefinite and unreviewable Executive detention without charge and without recourse to any other court of law.

### A. § 7 of the MCA is an Unconstitutional Restraint on the Article III Powers of the Federal Judiciary

The Government broadly contends that Congress may grant the Executive unchecked authority to imprison people it labels "enemy combatants" without ever charging them with (or presenting evidence of) offenses and without allowing any court to conduct an independent inquiry into the legality of their detentions. Petitioner Wazir, on the other hand, asks only that the Court enforce the structural requirement of separation of powers that is central to our form of government. Article III judicial review is an integral component of that system of checks and balances, checking the powers of both Congress and the Executive, and balancing them with the coequal authority of an independent Judiciary.[1]

"[T]he central judgment of the Framers of the Constitution [was] that, within our political scheme, the separation of governmental powers into three coordinate Branches is

---

[1] U.S. Const. Art. III §§ 1 and 2, cl. 1 and 2.

essential to the preservation of liberty." *Mistretta* v. *United States,* 488 U.S. 361, 380 (1989). Article III of the Constitution creates a federal judiciary that "stand[s] independent of the Executive and Legislature—to maintain the checks and balances of the constitutional structure, and also to guarantee that the process of adjudication itself remain[s] impartial." *N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 58 (1982) (plurality opinion). An essential element of the federal judiciary's responsibility and power under Article III is the "judicial duty to exercise an independent judgment." *St. Joseph Stock Yards Co. v. United States*, 298 U.S. 38, 53 (1936). Neither Congress nor the Executive may constitutionally prevent the judiciary from fulfilling that duty; both branches lack the authority to require "the federal courts to exercise '[t]he judicial Power of the United States,' U.S. Const., art. III, §1, in a manner repugnant to the text, structure, and traditions of Article III." *Plaut*, 514 U.S. at 218 (holding that Congress violated the separation of powers by retroactively commanding the federal courts to reopen final judgments).

The courts' Article III authority and the separation of powers principle ensure that, in cases of imprisonment, an independent Judiciary will be able to determine whether the Executive has the requisite factual basis for that detention. They also expressly limit Congress's ability to preclude the Judiciary from assessing the legality of Executive detention. Of specific relevance to this case is the Supreme Court's unwavering protection of the judiciary's power to make independent judgments by reserving to Article III courts the power to determine whether the evidence is sufficient to support a claim properly before the court because "[h]ow the facts are found will often dictate the decision of federal claims." *England v. La. St. Bd. of Med. Exam'rs*, 375 U.S. 411, 416

(1964). In fact, the Court has gone so far as to emphasize that under the "demands of due process and the constraints of Art[icle] III," a federal district court *cannot* constitutionally abdicate its duty to find facts, and can only defer to a record developed by a non-Article III officer when "the entire process takes place under the district court's total control and jurisdiction." *United States v. Raddatz*, 447 U.S. 667, 681, 683-84 (1980).

In addition to its consistent position regarding the constitutional reservation of fact-finding authority to Article III courts, the Court has also consistently held that Congress cannot "require federal courts to exercise the judicial power in a manner that Article III forbids" by "'prescrib[ing] rules of decision to the Judicial Department of the Government in cases pending before it.'" *Plaut*, 514 U.S. at 218 (quoting *Klein*, 80 U.S. (13 Wall.) at 146). Thus, in cases from *Klein*, 80 U.S. (13 Wall.) at 147 (striking as an unconstitutional violation of the separation of powers a statute that required federal courts to find a former Confederate citizen's acceptance of a presidential pardon conclusive evidence of the citizen's prior disloyalty to the Union), to *Plaut*, to *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 429 (1995) (invalidating Attorney General's statutorily-authorized certification as compelling Article III courts to rubber-stamp factual determinations made by the Executive), the Supreme Court has preserved inviolate the powers of the federal courts to engage in independent fact-finding and determine the rules of decision to be applied, in the face of Executive branch usurpations of judicial power and assertions that Congress had shifted these Article III powers to determine facts and adjudicate claims out of the courts' control.

In the present matter, the federal judiciary's Article III powers ensure that neither Congress nor the Executive can create "law-free" zones within the exclusive jurisdiction

and control of the United States where the Judiciary cannot independently inquire into the legality of Executive detention. Our constitutional structure does not provide the Executive with free reign to imprison individuals indefinitely, safe in the knowledge that *no court* can conduct a meaningful inquiry into the factual or legal bases for those imprisonments. Nevertheless in this case, as in *Klein*, Respondents urge an interpretation of MCA § 7 that would forbid the federal courts from considering any evidence and reaching their own judgments as to the legality of Petitioner's seven-year detention. *See Klein,* 80 U.S. (13 Wall.) at 147. According to Respondents' interpretation of § 7, Petitioner Haji Wazir must accept a declaration by a member of the Defense Department certifying the "enemy combatant" status of a detainee as a conclusive factual finding that determines his fate of indefinite, *incommunicado* detention. The Executive's claim of a constitutional right to displace the fact-finding prerogatives of the federal court fatally misunderstands Article III. The Executive claims the authority to intrude upon the core power of the federal courts in derogation of explicit constitutional and common law commands that repose both the fact-finding and adjudicatory functions in the courts. The Constitution does not abide such a result.

The pernicious nature of the interpretation being proffered by Respondents is readily revealed when examined in terms of the Supreme Court's jurisdiction. The language of Article III establishes that, as a matter of constitutional arrangement, Congress cannot use its power to remove the Court's ability to give ultimate judgment in Article III matters. Article III expresses the principle that Congress must vest "the judicial power of the United States" in "one supreme Court" and makes clear that the one Court's supremacy is in relation to any other "inferior" courts created by Congress. Article III then defines the

judicial Power as reaching nine categories of matter. The one supreme Court's "supremacy", then, is in relation to these nine categories, and it must be that the relationship of the one Court to the "inferior" courts with regard to these categories is one of superseding authority, *i.e.*, the one supreme Court must have the final work on issues arising in those nine categories. Any law by which Congress seeks to make exceptions to the Supreme Court's jurisdiction by reference to a specific issue then, must undermine Article III's purpose and meaning. "Statutes that remove jurisdiction from Article III's one supreme Court by reference to the Article III questions at issue" are likely, as is the case here, to be devices for dictating Congress's preferred answers to those questions. § 7's removal of habeas jurisdiction from the courts mandates acceptance of the Executive's portrayal of the factual circumstances underlying Petitioner's detention as well as its determination that he is an "enemy combatant" and therefore may be held without charge or trial indefinitely.

In short, the MCA allows Congress to achieve its particular desired answers to questions that unequivocally fall within the judicial power of the United States. Our constitutional plan does not permit Congress to employ "issue exceptions" that preclude "Supreme Court review in every case involving a particular subject."[2] Congress has not fulfilled its constitutional duty to provide for Article III's Supreme Court if it does not provide that court with the power to give ultimate judgment on all matters to which judicial power extends; such a court simply is not the "one Supreme Court" that Article III demands.[3] And if the power to have the final say on any matter to which the Constitution extends the judicial power of the United States is given to a body other than

---

[2] Leonard G. Ratner, *Congressional Power Over the Appellate Jurisdiction of the Supreme Court*, 109 U.Pa.L.Rev. 157, 201 (1960).

[3] U.S. Const. Art. III §§ 1 and 2, cl. 1 and 2.

the Supreme Court, then the Constitution's requirement that the judicial power be vested in only "one Supreme Court" is violated. In these circumstances, the body provided with such power would not meet the Constitution's requirement that all other federal tribunals be "inferior to" the "one Supreme Court" and the constitutionally-mandated vesting of jurisdiction in one ultimate tribunal would not exist.[4]

In arguing that the *Klein* rule does not apply when a legislative enactment merely amends an existing statute, Respondents rely on *Robertson v. Seattle Audubon Society,* 503 U.S. 429 (1992). In *Seattle Audubon Society,* the Supreme Court held that amendments to the United States Forest Service's timber management guidelines, which eliminated the basis for the plaintiffs' challenge to the statute, were not unconstitutional. *Seattle Audubon Soc'y*, 503 U.S. at 438. Thus, the case establishes that Congress is free to amend statutes which "compel[] changes in law, not findings or results under old law." *Id.* Unlike the timber management guidelines which were amended in *Seattle Audubon Society*, the MCA provides *no legal standard* by which the Court may evaluate whether a particular detainee in US custody has been *properly* detained as an Enemy Combatant under the statute. Instead of determining whether the Executive is acting lawfully in detaining Petitioner Wazir, the Court is required to substitute the representations of Respondents in the present matter that *they* have determined that Haji Wazir has been properly detained as an Enemy Combatant, and dismiss the case without further inquiry.

Respondents' reliance on *Miller v. French,* 530 U.S. 327 (2000), is similarly misplaced. In Miller, prisoners in federal custody challenged the constitutionality of the amended standards for relief and automatic stay provisions of the Prison Litigation

---

[4] *See generally* Laurence Claus, *The One Court That Congress Cannot Take Away: Singularity, Supremacy, and Article III*, Manuscript on file with the author (2009).

Reform Act ("PLRA").  As in *Seattle Audubon Society,* the Court ruled that the PLRA was constitutional because it did not "deprive courts of their adjudicatory role, but merely provides a new legal standard for relief and encourages courts to apply that standard promptly."  *Miller*, 530 U.S. at 350.  However, Congress provided no legal standards for the Court to apply in determining whether the Executive's actions are lawful, beyond requiring Respondents to represent to the Court that Petitioner Haji Wazir is being lawfully detained.

As this Court's decision applying *Boumediene* aptly illustrates, the Court is required to consider certain threshold facts in order to determine whether or not it has jurisdiction over Petitioner's claims. Mem. Op. at 45.  Nevertheless, Respondents' interpretation of the MCA requires the Court to defer completely to the government's determination of "enemy combatant" status without *any* fact-finding to determine whether an individual has been "properly detained as an Enemy Combatant, or awaiting such determination". MCA § 7(a); Resp't Mot. Dismiss 11.

Though the Court has not yet ruled on Respondents' Motion to Dismiss Petitioner Wazir's petition, it has cited friction with the government of Afghanistan as a factor weighing against a finding that Petitioner Wazir's detention violates the Suspension Clause.  Mem. Op. at 4.  In doing so, the Court recognized that the Afghan government could have an interest in the Court's determination of a habeas petition on behalf of an Afghan citizen detained by the United States at Bagram.  Thus, the Court was persuaded by Respondents' assertion of the *general proposition* that ordering the release of an Afghan petitioner's claim resulting in release in Afghan sovereign territory *could* cause friction with the government of Afghanistan. Mem. Op. at 42.

Notwithstanding the Court's finding that, *as a general rule* ordering the release of Afghan citizens into Afghanistan could cause friction with the host government, the case at bar does not pose that risk because Petitioner Wazir *has already been cleared for release by the Afghan government*. *See* Email from Shafeek M. Seddiq, Advisor to the Attorney General of Afghanistan, to Kathleen Kelly, dated February 2, 2009, attached as Ex. 1 to the Declaration of Attorney Tina Monshipour Foster ("Foster Decl."). In fact, the official position of the Afghan government is that there is no legal basis to detain petitioner Wazir under Afghan law. *Id.;* Comments from the Panel for Review of Prisoner Cases Transferred from Bagram and Guantanamo, dated June 26th, 2008 (Foster Decl., Ex. 2). Rather than causing friction with the host government, Petitioner's release would have quite the opposite effect – as the government of Afghanistan currently *disputes* the determination of the United States government that Haji Wazir is properly detained as an Enemy Combatant, and indeed, favors his release. *Id.*

In Respondents' view, the Court need not consider these facts because, under their interpretation of the MCA, the Court must disregard this evidence because Congress has provided that so long as the Executive represents that Haji Wazir is "properly detained" by the United States as an "enemy combatant", the Court lacks jurisdiction to hear his petition. In order for the Court to give effect to the MCA as interpreted by Respondents, the Court would be forced to disregard compelling evidence that, whatever the typical case may be, Petitioner Haji Wazir's release *does not* pose any risk of friction with the Afghan government. Petitioner Wazir has submitted evidence to the Court supporting a conclusion that the concern cited by the Respondents in support of their Suspension Clause argument *does not exist in this case.* The fact that the Respondents maintain that

11

the Court's exercise of jurisdiction over the cases of *other* Afghan detainees could potentially offend the government of Afghanistan does not absolve the Court of its duty to find facts in this case which are pertinent to its determination of the issue of subject matter jurisdiction. Article III of the Constitution creates a federal judiciary that "stand[s] independent of the Executive and Legislature—to maintain the checks and balances of the constitutional structure, and also to guarantee that the process of adjudication itself remain[s] impartial". *N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 58 (1982) (plurality opinion).

**B.   The Separation of Powers Principle Prohibits Congress From Requiring an Article III Court to Dismiss a Habeas Petition without Reference to Facts or Law**

The MCA diminishes the jurisdiction of Article III courts and violates the separation of powers principle by permitting Congress to *permanently* supplant the constitutionally-mandated judicial balancing of competing human interests, insulate the Executive's exercise of power from judicial review, and allow government officials to determine conclusively and secretively the reach of their own powers. The Supreme Court's protection of the judiciary's power to make independent judgments by reserving to Article III courts the power to determine whether the evidence is sufficient to support a claim properly before the court is necessary because "[h]ow the facts are found will often dictate the decision of federal claims". *England v. La. St. Bd. of Med. Exam'rs*, 375 U.S. 411, 416 (1964). This threat to liberty is precisely the evil that the separation of powers principle was intended to prevent.[5]

There are several unassailable facts that are readily ascertainable from the language

---

[5] *See generally* Laurence Claus, *Montesquieu's Mistakes and the True Meaning of Separation*, 25 Oxford J. Legal Studies 419 (2005).

of § 7 and legislative history surrounding the enactment of the MCA.[6]  First, the Act was intended to excise the authority to entertain habeas petitions from the jurisdiction of every federal court in the nation, including that of the Supreme Court.  Second, the inclusion of the Act's jurisdiction-stripping provision has never been cast as, and definitely is not, an exercise of Congress's authority to suspend the writ temporarily "in cases of Rebellion or Invasion" as § 7 makes no mention of any suspension.  Opponents of the legislation repeatedly stated, without contradiction, that there was no current "Rebellion or Invasion" that could justify suspending the writ.  *See, e.g.*, 152 Cong. Rec. S10368 (daily ed. Sept. 28, 2006) (Sen. Specter) ("Fact No. 3, uncontested. We do not have a rebellion or an invasion.").  And the legislative history confirms that the proponents of the MCA did not intend to enact a temporary measure.  *See* 152 Cong. Rec. S10404 (daily ed. Sept. 28, 2006) (Sen. Sessions) ("We are legislating through this law for future generations [and] future wars"); *id.* at S10270 (daily ed. Sept. 27, 2006) (Sen. Kyl) ("all future conflicts").  If there is no temporary suspension of the writ—and the use of the word "suspension" plainly conveys the intention that the writ will be restored—then there can be no understanding of § 7 other than that its prohibition of habeas corpus jurisdiction is *permanent*, not limited to a particular span of years or the duration of any particular emergency.  The MCA permanently diminishes the jurisdiction of Article III courts, and there can be no doubt that the MCA's removal of all habeas jurisdiction from Article III courts violates the constitutional plan adopted by the framers.

Unlike the scheme enacted by Congress in the Detainee Treatment Act ("DTA"),

---

[6] § 7 of the MCA provides: "No court, justice or judge shall have jurisdiction to hear or consider an application for a writ of habeas corpus filed by or on behalf of an alien detained by the United States who has been determined by the United States to have been properly detained as an enemy combatant or is awaiting such determination." MCA § 7 (amending 28 U.S.C. § 2241(e)(1)).

Pub.L. No. 109-148, 119 Stat. 2680, §§ 2739-2744, § 1005(e)(2) (2005), which provided for appeal from CSRT decisions of the Executive to the D.C. Circuit Court of Appeals, the MCA *entirely* cloaks the Executive's determinations from judicial scrutiny. Not only is the Judicial branch robbed of its ability to review the facts upon which the Executive's determination of "enemy combatant" status was made, but it is rendered powerless to assess whether the *legal standards and processes* used in creating that status and applying it to Petitioner are constitutionally permissible. Thus, as interpreted by Respondents, the MCA would require this Court to give conclusive effect to the Respondents' representation that Haji Wazir has been properly detained as an "enemy combatant," regardless of the process used to arrive at that determination, how that term is defined, or even the legal authority upon which the government relies to detain Petitioner.

This Court's recent decision in *Hamlily v. Bush,* Civil Action No. 05-0763 (JDB), 2008 U.S. Dist. LEXIS 103203 (D.D.C. Dec. 22, 2008) implicitly recognizes that the President's authority to detain "enemy combatants" pursuant to Congressional authorization is not subject to unlimited deference, but must be circumscribed by the laws of war. *See generally id.* While Respondents have refined their position by asserting that the authority to detain Guantanamo detainees is based on the Congressional grant of authority under the Authorization for Use of Military Force Against Terrorists Pub.L. No. 107-40, 11 Stat. 224, §§ 1-2 (2001) ("AUMF"), no such limitation is acknowledged in the case at bar. Mem. Op. at 22 n.11. Even assuming, *arguendo*, that the President has authority to detain individuals based not only on the grant of authority conferred by Congress under the AUMF, but also pursuant to some inchoate inherent power attendant

to his role as Commander in Chief, the Executive's exercise of such power must nevertheless still be circumscribed by the laws of war. Otherwise, the Executive could avoid judicial scrutiny of its actions simply by asserting that it has not exceeded the powers that it alone has created. While Congress clearly has the authority to delegate some law-making functions to the Executive, it cannot dictate that the courts must defer to the Executive's pronouncement of new powers, nor its interpretation of whether or not it has exceeded its authority. By requiring that the Court give conclusive effect to the Executive's determination that a factual predicate to jurisdiction does not exist, and precluding the Court from reviewing any such determination, the MCA unconstitutionally impinges upon the province of the Judicial branch and eliminates a constitutionally-mandated check on the Executive branch. In so doing, it unequivocally violates the separation of powers principle.

Respondents argue that the Court in *National Coalition to Save Our Mall v. Norton*, 269 F.3d 1092 (D.C. Cir. 2001), upheld the constitutionality of a statute withdrawing the jurisdiction of the courts from hearing cases relating to the construction of the World War II Memorial on the National Mall. However, the law that Respondents claim strips federal courts of jurisdiction does what the law in *Seattle Audubon Society* did, which was to amend the statutes underlying the plaintiffs' original claim, such that the defendants' actions were no longer illegal under any statute. The Court in *National Coalition to Save Our Mall* in fact reserves its own jurisdiction to hear constitutional questions in this case and others. "The Act does not purport to bar our consideration of its own constitutionality." *Nat'l Coalition,* 269 F.3d at 1095. "One sure [*Klein*] precept is that a statute's use of the language of jurisdiction cannot operate as a talisman that *ipso*

*facto* sweeps aside every possible constitutional objection…As the Coalition poses no constitutional objection to the substance of Public Law 107-11, this element of *Klein* is of no concern." *Id.* at 1096.

Similarly, Respondents ignore a key factor at issue in *INS v. St. Cyr,* 533 U.S. 289, 314 (2001). "If it were clear that the question of law could be answered in another judicial forum, it might be permissible to accept the INS' reading of [the statute]. But *the absence of such a forum*, coupled with the lack of a clear, unambiguous, and express statement of congressional intent to preclude judicial consideration on habeas of such an important question of law, strongly counsels against adopting a construction that would raise serious constitutional questions." *St. Cyr,* 533 U.S. at 314 (emphasis added). Though Petitioner has had the misfortune of being detained by the United States at Bagram, rather than Guantanamo, the Afghan Government is equally powerless in affecting his release from US custody. In the absence of this Court's exercise of jurisdiction in this case, there is no other forum to which Petitioner Wazir can appeal from Respondent's unilateral, secret, and unsupported conclusion that his is properly detained as an Enemy Combatant.

**Conclusion**

For the reasons stated above, Petitioners' respectfully urge the Court to disregard § 7 of the MCA as a violation of Article III of the Constitution and the separation of powers principle, and in light of that invalidation, permit Petitioner Wazir to pursue the prosecution of his petition for a writ of habeas corpus under the federal habeas statute, 28 U.S.C. §2241.

Dated: New York, New York

May 29, 2009

                              Respectfully submitted,

                              _____/s/_____
                              Tina Monshipour Foster
                              International Justice Network
                              PO Box 610119
                              New York, New York, 11361-0119
                              Tel.: 917.442.9580
                              Email: tina.foster@ijnetwork.org

                              _____/s/_____
                              BARBARA OLSHANSKY (DC Bar No. NY0057)
                              KATHLEEN KELLY (CA Bar No. 228571)
                              International Human Rights Clinic
                              Stanford Law School
                              559 Nathan Abbott Way
                              Stanford, CA, 94305
                              Tel. 650.721-5885
                              Fax 650.723.4426