**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

HAJI WAZIR, <u>et</u> <u>al.</u>,

    Petitioners,

        v.

ROBERT GATES, <u>et</u> <u>al.</u>,

    Respondents.

Civil Action No.  06-1697

<u>MEMORANDUM OPINION</u>

Haji Wazir, an Afghan citizen, is being detained by the United States at the Bagram

Theater Internment Facility at Bagram Airfield, Afghanistan.  On September 29, 2006, Wazir

filed a petition for a writ of habeas corpus, and respondents then filed a motion to dismiss for

lack of jurisdiction on October 3, 2008.  Respondents had filed similar motions to dismiss three

other habeas petitions filed by Bagram detainees, and on November 17, 2008, the four cases were

consolidated for argument.  This Court heard oral argument from the parties on January 7, 2009.

On April 2, 2009, the Court denied respondents' motion to dismiss the petitions filed by

the other three Bagram detainees but deferred ruling on respondents' motion to dismiss the

petition filed by Wazir.  <u>See</u> <u>Al Maqaleh v. Gates</u>, 604 F. Supp. 2d 205 (D.D.C. 2009).  Applying

the multi-factor test set forth by the Supreme Court in <u>Boumediene v. Bush</u>, 128 S. Ct. 2229

(2008), this Court reasoned that the other three petitioners, none of whom are Afghan citizens,

are entitled to invoke the Suspension Clause of the Constitution, Art. I. § 9 cl. 2.  Hence, the

Court concluded, § 7(a) of the Military Commissions Act of 2006 ("MCA"), Pub. L. No. 109-

366, 120 Stat. 2600, which deprives courts of jurisdiction to entertain habeas petitions filed by

individuals designated by the President as "enemy combatants," is unconstitutional as applied to

those three petitioners.  As to Wazir, however, the Court determined that "there is a real

possibility of friction with the Afghan government with respect to Afghan detainees."  604 F.

Supp. 2d at 229.  In balancing the <u>Boumediene</u> factors, this possibility of friction was sufficiently

weighty to defeat Wazir's claim that he is entitled to invoke the protections of the Suspension

Clause.  <u>Id.</u> at 231.

Having rejected Wazir's Suspension Clause argument, the Court considered "four other

grounds to deny respondents' motions to dismiss:  the MCA constitutes a usurpation of the

Judiciary's Article III powers; the MCA amounts to a permanent suspension of the writ of habeas

corpus; the jurisdiction-stripping provisions of the MCA do not apply to [Wazir]; and

respondents are violating [Wazir's] rights under constitutional, statutory, and international law."

<u>Id.</u> at 232.  The Court rejected the three latter grounds.  <u>Id.</u> at 233-35.  As to the first ground,

however, the Court found the briefing inadequate to permit a reasoned conclusion.  <u>Id.</u> at 233.

The Court therefore ordered further briefing on this issue.  In particular, the Court ordered further

briefing as to whether MCA § 7 violates the principles set out in <u>United States v. Klein</u>, 80 U.S.

(13 Wall.) 128 (1871).

<u>Klein</u> arose after the Civil War.  In 1863, Congress passed a law allowing individuals

whose property was seized during the Civil War to recover their property (or receive

compensation for it) upon a showing of loyalty.  In <u>United States v. Padelford</u>, 76 U.S. (9 Wall.)

531 (1869), the Supreme Court held that proof of a presidential pardon was sufficient to prove

loyalty.  Klein, whose property had been seized during the Civil War but who had since been

pardoned, then filed suit in the Court of Claims and successfully recovered his property.  The

government appealed, and as the appeal was pending before the Supreme Court, Congress passed

a new statute.  The new law provided that proof of a presidential pardon did not show <u>loyalty</u>, but instead was conclusive proof of <u>disloyalty</u>, and proof of a pardon would divest courts of jurisdiction.

The Supreme Court held that the statute was unconstitutional.  The Court recognized that Congress has authority to control the appellate jurisdiction of the Supreme Court, but held "that Congress has inadvertently passed the limit which separates the legislative from the judicial power."  80 U.S. at 147.  By declaring that pardons were not, as the Court had previously found, proof of loyalty, but instead were conclusive proof of disloyalty, Congress had "prescribe[d] rules of decision to the Judicial Department of the government in cases pending before it."  <u>Id.</u> at 146.  The Court also held that by "impairing the effect of a pardon," the statute "infring[ed] the constitutional power of the Executive."  <u>Id.</u> at 147.

Whether MCA § 7 violates <u>Klein</u> and its progeny is the only remaining issue.  The Court previously considered all of Wazir's other arguments and, for the reasons stated in the April 2 memorandum opinion, found them insufficient to defeat respondents' motion to dismiss.  Because the Court now finds Wazir's argument under <u>Klein</u> unavailing for the reasons below, respondents' motion to dismiss Wazir's habeas petition will be granted.

## <u>ANALYSIS</u>

The issue before the Court is whether MCA § 7 violates the separation of powers principle set out in <u>Klein</u> and is therefore facially unconstitutional.  A statute can potentially run afoul of <u>Klein</u> in two ways.  First, Congress may not pass a statute "infringing the constitutional power of the Executive."  <u>Klein</u>, 13 U.S. at 147; <u>see also</u> <u>United States v. Sioux Nation of Indians</u>, 448 U.S. 371, 404 (1980) (interpreting scope of <u>Klein</u>).  MCA § 7, if anything, <u>enhances</u>

the Executive's role, and hence this aspect of <u>Klein</u> is not at issue here.  Second, a statute violates

<u>Klein</u> if it "prescribe[s] a rule of decision in a case pending before the courts."  <u>Sioux Nation</u>, 448

U.S. at 404.  It is this second aspect of <u>Klein</u> that forms the basis of petitioner's challenge.  And,

in analyzing this prong of <u>Klein</u>, respondents do not argue that petitioner's case was not pending

when the MCA was enacted.  <u>See</u> Resps.' Br. at 9 & n.3.  The only question, then, is whether

MCA § 7 unconstitutionally prescribes a "rule of decision."

A "rule of decision" is defined as a "statute . . . that provides the basis for deciding or

adjudicating a case."  <u>Black's Law Dictionary</u> 1359 (8th ed. 2004).  The only "rule of decision"

that the Supreme Court has rejected as unconstitutional under <u>Klein</u> was the statute at issue in

<u>Klein</u> itself.  There, as discussed above, Congress enacted a new statute providing that a

presidential pardon was not equivalent to proof of <u>loyalty</u>, as the Supreme Court had previously

held, but was in fact proof of <u>disloyalty</u>.  <u>See</u> <u>Klein</u>, 13 U.S. at 145.  If, on appeal from the Court

of Claims, the Supreme Court determined that a claimant had provided a presidential pardon as

proof of loyalty, then the statute required the Supreme Court to dismiss the case for lack of

jurisdiction.  <u>Id.</u>

The Supreme Court significantly altered the scope of <u>Klein</u> in <u>Robertson v. Seattle</u>

<u>Audubon Society</u>, 503 U.S. 429 (1992).  At issue in <u>Robertson</u> was a statute enacted while two

cases were pending in the lower federal courts.  The pending cases challenged proposed timber

harvesting in the Pacific Northwest.  In response to the litigation, Congress passed an

appropriations act containing a clause providing that "Congress hereby determines and directs

that management of areas according to [other subsections of the statute] is adequate consideration

for the purposes of meeting the statutory requirements that are the basis for the [pending

litigation]."  503 U.S. at 434-35.  The defendants sought dismissal based on the new statute, and

plaintiffs argued that it violated Klein.  Although the district court rejected plaintiffs' argument,

the Ninth Circuit reversed, holding that the statute "directs the court to reach a specific result and

make certain factual findings."  Seattle Audubon Soc'y v. Robertson, 914 F.2d 1311, 1316 (9th

Cir. 1990).

    The Supreme Court granted certiorari and unanimously reversed.  The Court concluded

that the statute at issue "replaced the legal standards underlying the two original challenges . . .

without directing particular applications under either the old or new standards."  503 U.S. at 437.

In other words, the statute "compelled changes in law, not findings or results under old law."  Id.

at 438.  While some have argued that this interpretation in fact overruled Klein,[1] most scholars

and courts interpret Robertson to have narrowed Klein so that it applies only when Congress

directs courts how to apply existing laws, but not when Congress adopts a new law.  See Erwin

Chemerinksy, Federal Jurisdiction § 3.2 (5th ed. 2007); Nat'l Coalition to Save Our Mall v.

Norton, 269 F.3d 1092, 1097 (D.C. Cir. 2001).

    Under Klein, as interpreted by Robertson, petitioner's argument fails.  MCA § 7 does not

direct courts how to apply existing laws.  Nor does it command courts to find that certain

petitioners are or are not "enemy combatants."  Rather, it amends the applicable substantive law

-- 28 U.S.C. § 2241 -- to strip courts of jurisdiction for petitioners detained as "enemy

combatants."  And when a statute merely "amends the applicable substantive law," it does not

---

[1] See, e.g., Amy D. Ronner, Judicial Self-Demise: The Test of When Congress Impermissibly Intrudes on Judicial Power after Robertson v. Seattle Audubon Society and the Federal Appellate Courts' Rejection of the Separation of Powers Challenges to the New Section of the Securities Exchange Act of 1934, 35 Ariz. L. Rev. 1037, 1048-55 (1993).

violate <u>Klein</u>.  <u>See</u> <u>Save Our Mall</u>, 269 F.3d at 1097; <u>see also</u> <u>Plaut v. Spendthrift Farm, Inc.</u>, 514

U.S. 211, 218 (1995) ("Whatever the precise scope of <u>Klein</u> . . . later decisions have made clear

that its prohibition does not take hold when Congress 'amends applicable law.'") (quoting

<u>Robertson</u>, 503 U.S. at 441); <u>Jung v. Ass'n of Am. Medical Colleges</u>, 2006 WL 1582667, at *2

(D.C. Cir. June 1, 2006) ("Congress may amend substantive laws, even when doing so affects

pending litigation.") (citing <u>Robertson</u>, 503 U.S. at 438).

　　　Other statutes that have been upheld under <u>Klein</u> and <u>Robertson</u> further demonstrate that

MCA § 7 does not violate <u>Klein</u>.  The statute at issue in <u>Jung</u>, for example, is instructive.  There,

as an antitrust suit challenging the National Resident Matching Program was pending, Congress

passed a law exempting the matching program from the antitrust laws and "bar[ring] evidence of

any participation in such programs in support of a claim in federal court that antitrust laws have

been violated."  2006 WL 1582667, at *1.  The law expressly applied to pending suits.  <u>Id.</u>

Under the new statute, the case was dismissed.  On appeal, the D.C. Circuit rejected plaintiff's

argument under <u>Klein</u> and <u>Robertson</u>, holding that "Congress has done nothing more here than

amend the antitrust laws by carving out a safe harbor for participation in [the Matching

Program]."  <u>Id.</u> at *2.

　　　<u>Klein</u>, then, is a narrow holding as interpreted in subsequent cases.  As respondents point

out, <u>Klein</u> is rarely (if ever) successfully invoked in constitutional challenges to federal statutes.

Respondents aver that since <u>Klein</u> was decided in 1871, the Supreme Court has never declared a

federal statute unconstitutional under <u>Klein</u>.  Resps.' Br. at 5.  Indeed, respondents contend --

without contradiction -- that only two courts of appeals have overturned federal statutes under

<u>Klein</u>, and that both courts were later reversed by the Supreme Court.  <u>Id.</u> (citing <u>Seattle</u>

Audubon Soc'y v. Robertson, 914 F.2d 1311 (9th Cir. 1990), and French v. Miller, 178 F.3d 437

(7th Cir. 1999)).  In the end, Klein offers no aid to Wazir in his challenge to MCA § 7.

Although this Court ordered further briefing only on the Klein issue, petitioner invokes

several cases that address other separation of powers principles.  For example, petitioner

repeatedly cites to Plaut.  See Pet'r's Resp. at 3, 5, 6.  Although Plaut briefly addressed Klein

(and, in fact, underscored the narrowing impact of Robertson), the separation of powers principle

animating that case is not at issue here.  There, the question was whether Congress may re-open a

final judgment issued by a court.  See Plaut, 514 U.S. at 218.  MCA § 7 has nothing to do with

re-opening final judgments rendered by courts.  Plaut, then, does not help petitioner's case.

Petitioner also cites to Gutierrez de Martinez v. Lamagno, 515 U.S. 425 (1995).

Although Gutierrez does not interpret or apply Klein (indeed, it only cites Klein once, and then

with a "cf." signal), the separation of powers principles addressed there merit some examination.

Gutierrez was a tort lawsuit brought against a federal employee, and at issue was a statute

permitting the Attorney General to certify whether the employee was acting within the scope of

his employment at the time of the allegedly tortious behavior.  Id. at 421-22.  If the defendant-

employee was acting within the scope of his employment, then the United States would be

substituted as the defendant and certain immunities could apply.  Id.  The Attorney General had

certified that the defendant-employee was acting within the scope of his employment, and once

the United States was substituted as the defendant, the United States claimed sovereign immunity

under the Federal Tort Claims Act.  The plaintiff challenged the statute on separation of powers

grounds, arguing that the key threshold determination -- whether an employee was acting within

the scope of his employment -- was made by the Executive with no judicial review.  The

Supreme Court recognized that such a provision could be problematic because it "would cast Article III judges in the role of petty functionaries, persons required to enter as a court judgment an executive officer's decision, but stripped of capacity to evaluate independently whether the executive's decision is correct." Id. at 426.  Despite such sweeping language, however, Gutierrez nonetheless held that threshold determinations may be committed to the Executive if Congress clearly intended that result.  Id. at 424-25; see also Johnson v. Robison, 415 U.S. 361, 368-69 (1974) (upholding statute that forbid judicial review of threshold determinations by the Administrator of the Department of Veterans' Affairs because the constitutionality of the statute itself was subject to challenge).  The Supreme Court then analyzed whether Congress's intent was clear and found that it was not.  Gutierrez, 515 U.S. at 430-34.

The wrong complained of by the plaintiff in Gutierrez is the same as that complained of by petitioner here:  the threshold question -- whether a detainee is an "enemy combatant" -- is answered by the Executive with no opportunity for judicial review.  But unlike the statute at issue in Gutierrez, Congress's intent to make the Executive's "enemy combatant" determination unreviewable is plain.  As is clear from the statutes passed and cases decided before the Supreme Court decided Boumediene, Congress intended to deprive courts of jurisdiction over habeas petitions filed by detainees determined to be "enemy combatants" by the President.  See Al Maqaleh, 604 F. Supp. 2d at 212 (recounting history leading to Boumediene).  Hence, although Gutierrez contains abundant dicta aiding petitioner's argument, Gutierrez's actual holding does not advance petitioner's case.

Finally, petitioner resurrects several arguments the Court previously considered and addressed in its April 2 opinion.  See, e.g., Pet'r's Resp. at 10-12 (re-arguing the "friction with the

host government" factor of the <u>Boumediene</u> test); <u>id.</u> at 12-13 (re-arguing that MCA § 7

constitutes a permanent suspension of the writ).  To support these arguments, he presents new

facts as well.  Insofar as petitioner is asking this Court to reconsider or alter its April 2 judgment,

however, he makes no effort to meet the standards set forth by the Federal Rules of Civil

Procedure.  <u>See</u> Fed. R. Civ. P. 59(e), 60(b).  Absent a motion for reconsideration or a motion to

amend or alter judgment, the Court will not reconsider its April 2 opinion at this time.[2]

     In sum, MCA § 7 does not violate separation of powers under <u>Klein</u>, as interpreted by

<u>Robertson</u> and subsequent decisions.  Nor do the other separation of powers doctrines invoked by

petitioner facially defeat MCA § 7.  Because the <u>Klein</u> question was the only remaining issue

preventing this Court from granting respondents' motion to dismiss petitioner Wazir's habeas

petition, and because the Court finds in favor of respondents on that issue, respondents' motion to

dismiss will be granted.  A separate order accompanies this opinion.

     **SO ORDERED.**

_____
/s/
JOHN D. BATES
United States District Judge

Date:    June 29, 2009

---

[2] Hence, the Court expresses no view on the merits of petitioner's resurrected arguments.